**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NORTH DAKOTA**

| | | |
|---|---|---|
| Morgan Fitch, | ) | |
| | ) | |
| Plaintiff, | ) | **ORDER DENYING PLAINTIFF'S** |
| | ) | **MOTION FOR PARTIAL SUMMARY** |
| vs. | ) | **JUDGMENT** |
| | ) | |
| BNSF Railway Company, | ) | |
| a Delaware Corporation, | ) | Case No. 1:21-cv-181 |
| | ) | |
| Defendant. | ) | |
| | ) | |

Before the Court is the Plaintiff's motion for partial summary judgment filed on November 17, 2022. See Doc. No. 45. The Defendant filed a response in opposition to the motion on December 8, 2022. See Doc. No. 58. The Plaintiff filed a reply brief on December 20, 2022. See Doc. No. 59. For the reasons set forth below, the motion is denied.

## I.    BACKGROUND

The Plaintiff, Morgan Fitch, began working for BNSF Railway Company ("BNSF") on October 28, 2013. On February 28, 2020, Fitch was a conductor on a three-person crew operating a train for BNSF. The crew was assigned to take the train from Minot, North Dakota, to Rugby, North Dakota. The train was operating with three locomotes – BNSF 3738, BNSF 5717, and BNSF 6710 – and 115 railcars.

Approximately 37 miles east of Minot, North Dakota, the train was diverted from the mainline into a siding near Towner, North Dakota. As the train entered the siding at Towner, the engineer, Bradley Herzog, set a minimum train air-brake application to gradually bring the train to a stop before the siding signal. However, the end of train device showed 0 pounds per square

inch on the rear of the train, which indicated a loss of air pressure was causing an unexpected emergency-brake application.

Fitch alleges the train's unexpected emergency stop caused a sudden slack action that jolted the locomotive she was in. Fitch was standing near the engineer control stand at the top of a staircase at the time of the slack action. She claims the sudden force of the slack action caused the train to throw her down a stairway and into the nose of the locomotive, which resulted in injuries to her right arm and shoulder. Fitch alleges her injuries were caused by BNSF's violation of the Federal Employers' Liability Act ("FELA"), 45 U.S.C. § 51 *et. seq.*, the Locomotive Inspection Act ("LIA"), 49 U.S.C. § 20701 *et. seq.*, and the Federal Safety Appliance Act ("FSAA"), 49 U.S.C. § 20301 *et. seq.* See Doc. No. 1. Specifically, Fitch contends BNSF allowed locomotives whose brakes and components were defective and unsafe to be used on its railroad line.

Fitch filed a motion for partial summary judgment requesting the Court find 1) BNSF violated the FSAA and the LIA; 2) BNSF's violations of the FSAA and the LIA caused, in whole or in part, the February 28, 2020, incident resulting in injury to Fitch; and 3) BNSF's violations bar its contributory negligence affirmative defense. BNSF filed a response in opposition to the motion, arguing it did not violate federal statutes, the train Fitch was working on was not defective, and factual disputes preclude summary judgment. The motion has been fully briefed and is ripe for disposition.

## II.   **STANDARD OF REVIEW**

Summary judgment is appropriate when the evidence, viewed in a light most favorable to the non-moving party, indicates no genuine issues of material fact exist and that the moving party is entitled to judgment as a matter of law. Davison v. City of Minneapolis, Minn., 490 F.3d 648,

654 (8th Cir. 2007); see Fed. R. Civ. P. 56(a). Summary judgment is not appropriate if there are factual disputes that may affect the outcome of the case under the applicable substantive law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). An issue of material fact is genuine if the evidence would allow a reasonable jury to return a verdict for the non-moving party. Id. The purpose of summary judgment is to assess the evidence and determine if a trial is genuinely necessary. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

The court must inquire whether the evidence presents a sufficient disagreement to require the submission of the case to a jury or whether the evidence is so one-sided that one party must prevail as a matter of law. Diesel Mach., Inc. v. B.R. Lee Indus., Inc., 418 F.3d 820, 832 (8th Cir. 2005). The moving party bears the responsibility of informing the court of the basis for the motion and identifying the portions of the record which demonstrate the absence of a genuine issue of material fact. Torgerson v. City of Rochester, 643 F.3d 1031, 1042 (8th Cir. 2011). The non-moving party may not rely merely on allegations or denials in its own pleading; rather, its response must set out specific facts showing a genuine issue for trial. Id.; Fed. R. Civ. P. 56(c)(1). The court must consider the substantive standard of proof when ruling on a motion for summary judgment. Anderson, 477 U.S. at 252. If the record taken as a whole and viewed in a light most favorable to the non-moving party could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial and summary judgment is appropriate. Matsushita, 475 U.S. at 587.

## III.   LEGAL DISCUSSION

Fitch's complaint alleges three causes of action: 1) negligence under the Federal Employer's Liability Act ("FELA"), 45 U.S.C. § 51; 2) violation of the Locomotive Inspection Act ("LIA"), 49 U.S.C. § 20701-20703; and 3) violation of the Federal Safety Appliance Act

("FSAA"), 49 U.S.C. § 20301-20306. FELA provides a cause of action to railroad employees for injuries "resulting in whole or in part from the negligence of [the railroad] ... or by reason of any defect or insufficiency, due to its negligence, in its cars, engines, appliances, machinery, track, roadbed, works, ... or other equipment." 45 U.S.C. § 51. The Eighth Circuit has recognized that Congress intended FELA to be a broad statute designed to be liberally interpreted to fulfill the intent of Congress. Hane v. Nat'l R.R. Passenger Corp., 110 F.3d 573, 574 (8th Cir. 1997).

FELA is a remedial statute grounded in negligence. The plaintiff's burden of proof in a FELA action is significantly lighter than it would be in an ordinary negligence case. FELA's most distinctive departure from the common law is in the area of causation. The plain language of 45 U.S.C. § 51 establishes a standard of "in whole or in part" causation which replaces the common law standard of proximate causation. Proof of an accident alone is not proof of negligence. Id. The Eighth Circuit has said that "[I]t is the jury's task to determine negligence under FELA." Hane v. Nat'l R.R. Passenger Corp., 110 F.3d 573, 574 (8th Cir. 1997).

In addition to a negligence cause of action under 45 U.S.C. § 51, FELA also provides for certain causes of action which are not based upon negligence. These actions are brought under FELA for injuries caused by the railroad's violation of the Federal Safety Application Act, 49 U.S.C. § 20301 et. seq., and the Locomotive Inspection Act, 49 U.S.C. § 20701 et. seq. In some cases, the same facts which give rise to a claim under the general negligence provisions of FELA may also provide a basis for a related claim under FSAA and LIA.

The FSAA requires railroads to ensure certain railroad equipment is kept in prescribed condition. If the equipment is not kept in the prescribed condition and an employee is injured, the employee may bring a cause of action under FELA. The LIA requires railroads to ensure their locomotives are properly maintained and safe to operate and imposes strict liability on a railroad

that fails to do so. <u>Matson</u>, 240 F.3d at 1235; <u>Wright v. Ark. and Mo. R.R. Co.</u>, 574 F.3d 612, 620 (8th Cir. 2009). FSAA and LIA claims must be brought under FELA because they do not create an independent cause of action. <u>BNSF Ry. Co. v. Seats, Inc.</u>, 900 F.3d 545, 547-48 (8th Cir. 2018). "The congressional purpose underlying the LIA is basically the same as that underlying the [FSAA]." <u>Id.</u> at 547 (internal quotations omitted). "[T]he same principles apply in an action under the [LIA] as in one under the Safety Appliance Acts." <u>Id.</u> citing to <u>Tipton v. Atchison, T. & S.F. Ry. Co.</u>, 298 U.S. 141, 151 (1936).

### A.   FEDERAL SAFETY APPLIANCE ACT

The FSAA provides a list of equipment that a railroad must keep in prescribed condition. The FSAA requires a locomotive to be "equipped with a power-driving wheel brake and appliances for operating the train-brake system." 49 U.S.C. § 20302. Additionally, the FSAA provides that a train may be used on railroad lines only if "(A) enough of the vehicles in the train are equipped with power or train brakes so that the engineer on the locomotive hauling the train can control the train's speed without the necessity of brake operators using the common hand brakes for that purpose; and (B) at least 50 percent of the vehicles in the train are equipped with power or train brakes and the engineer is using the power or train brakes on those vehicles and on all other vehicles equipped with them that are associated with those vehicles in the train."

Fitch cites to *Grogg v. Missouri Pac. R. Co.*, 841 F.2d 210 (8th Cir. 1988) in support of her contention that the train's undesired-emergency-brake application establishes BNSF's violation of the FSAA. In *Grogg* the Eighth Circuit Court of Appeals held a plaintiff may prove equipment on a train was in violation of the FSAA by showing "either evidence of some particular defect, or the same inefficiency may be established by showing a failure to function, when operated with due care, in the normal, natural, and usual manner." <u>Id.</u> at 212 citing to <u>Myers v. Reading Co.</u>, 331

U.S. 477, 483 (1947). "Proof of an actual break or visible defect * * * is not a prerequisite to a finding that the statute has been violated. Where a jury finds that there is a violation, it will be sustained, if there is proof that the mechanism failed to work efficiently and properly * * *. The test in fact is the performance of the appliance." Id. Unlike the summary judgment motion before the Court, in *Grogg* the Eighth Circuit considered whether the district court erred in directing a verdict against the plaintiff on her FSAA claim. Thus, the focus of the Court was whether the claim should have been submitted to a jury.

The plaintiff in *Grogg* alleged she was injured when the train on which she was an engineer went into an emergency stop because an air brake hose separated from one of the cars on the train. The undisputed record showed,

> the train braked unexpectedly when an air hose failed to remain attached to its train car, causing the air braking system suddenly to lose pressure and go into an emergency stop. Although the cause of the air hose failure was not conclusively shown and the missing hose was never examined or produced at trial, this hose was designed under normal operating conditions to remain attached in order to maintain sufficient air pressure for the train to be slowed or stopped on command.

Id. at 212-213.

The Eighth Circuit held,

> [T]hese facts would allow the jury to find the air hose failed to function in the normal, natural, and usual manner because it separated from the car at a time when it should not have done so… Even under [the defendant's] highly optimistic version of the facts, an air hose that cannot safely negotiate tracks encountered during routine train operation could demonstrate a failure to perform up to FSAA standards, and a failure of equipment to perform as required by the [FSAA] is in itself an actionable wrong."

Id. at 213 (citations omitted). The Court noted the defendant's theories concerning more remote causes of the hose failure were theories the jury could choose whether or not to believe. Id. The Court concluded the district court erred in directing a verdict against the plaintiff because the plaintiff "made a submissible case on whether the condition that caused the sudden braking—the

missing air hose—was a violation of the FSAA, and thus, [her] FSAA claim should have been submitted to the jury." Id.

Fitch argues the undisputed evidence in this case shows the air-brake system's failure to perform as required proves BNSF's FSAA violation. The Court disagrees. Unlike *Grogg* where the undisputed evidence showed an unattached air hose caused the sudden breaking, the present case has conflicting evidence as to the cause of the unexpected emergency braking. Fitch has not identified a piece of equipment that failed to function when operated with due care, in the normal, natural, and usual manner. William Ningen, a mechanical foreman employed by BNSF, testified at his deposition regarding the potential causes of emergency braking on trains. He stated, "[c]runched up air hoses, bent air hoses, collapsed, train coming apart, cars separating, engineer putting the train into emergency itself, or a faulty ETD or end of train device" can cause unexpected emergency braking."

Herzog and Townsend testified that they suspect the end-of-train device ("EOTD") was defective or malfunctioning. See Doc. Nos. 47-2, pp. 12 and 15 and 47-3, p. 17. However, the crew members acknowledged they did not have sufficient expertise to diagnose an issue with the EOTD and were only speculating on the cause of the train going into emergency braking. See Doc. Nos. 47-2, pp. 12 and 15 and 47-3, pp. 17 and 21. Additionally, BNSF inspected 114 railcars, the lead locomotive where the head-of-train device is located, and the end-of-train device. BNSF did not find any defect relevant to the unexpected emergency stop in the lead locomotive and the 114 railcars. The condition of the rolling stock, including the breaks, was listed as "ok" in the report of inspection of the 114 railcars. See Doc. No. 23-3. The EOTD inspection notes the device was in good condition and exhibited signs of normal handling. See Doc. No. 23-4. No abnormal behavior was noted. The report states review of the event recorder data from the lead locomotive

and the data log from the EOTD "was inconclusive regarding what triggered the UDE." Id. Although review of the data log from the EOTD indicated the unexpected emergency stop was triggered somewhere near the rear end of the train, BNSF was not able to determine if the end-of-train device had a role in the stop.

Suffice it to say, the cause of the unexpected emergency stop is not clear. Although the train's emergency braking is undisputed, there are genuine issues of material fact as to the cause. The questions of what piece of equipment, if any, failed to work efficiently and properly and whether the failure is a violation of the FSAA are better suited for jury determination and will not be disposed of by Fitch's partial summary judgment motion.

## B.   LOCOMOTIVE INSPECTION ACT

LIA requires railroad carriers to use locomotives with parts and appurtenances that "are in proper condition and safe to operate without unnecessary danger of personal injury." 49 U.S.C. § 20701. Fitch argues the unexpected emergency stop shows the air-brake system did not operate as intended. Fitch maintains that the air-braking system's failure to function properly is a violation of LIA.

The same disputed facts that preclude summary judgment as to Fitch's FSAA claim also preclude the granting of summary judgment on the issue of liability under the Locomotive Inspection Act. The parties dispute which parts and appurtenances caused the emergency stop and whether they were in the proper condition required by LIA. These are questions of fact best left to the consideration of the jury at trial. Thus, summary judgment is inappropriate on Fitch's LIA claim.

Fitch requests the Court find BNSF's violations of FSAA and LIA caused, in whole or in part, the February 28, 2020, incident resulting in her injury. She further argues BNSF's violations bar its contributory negligence affirmative defense. The Court need not address these issues as Fitch's motion for partial summary judgment on her FSAA and LIA claims is denied.

IV.   **CONCLUSION**

The Court finds that genuine issues of material facts exist and partial summary judgment is not warranted at this stage. For the reasons set forth above, the Plaintiff's motion for partial summary judgment (Doc. No. 45) is **DENIED**. The Plaintiff's motion for a hearing (Doc. No. 48) is also **DENIED**.

**IT IS SO ORDERED.**

Dated this 17th day of July, 2023.

*/s/  Daniel L. Hovland* _____
Daniel L. Hovland, District Judge
United States District Court

9