## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NORTH DAKOTA

| | | |
|---|---|---|
| Morgan Fitch, | ) | |
| | ) | |
| Plaintiff, | ) | **ORDER GRANTING IN PART** |
| | ) | **MOTION TO COMPEL** |
| v. | ) | |
| | ) | |
| BNSF Railway Company, | ) | Case No.: 1:21-cv-00181 |
| a Delaware Corporation, | ) | |
| | ) | |
| Defendant. | ) | |

On October 11, 2024, Defendant BNSF Railway Company ("BNSF"), filed a *Motion to Compel Production of Plaintiff's OnX Application Information*. (Doc. No. 131). On October 16, 2024, Plaintiff Morgan Fitch ("Fitch") filed a response in opposition to BNSF's motion. (Doc. No. 135). BNSF filed a reply on October 18, 2024. (Doc. No. 137). For the reasons set forth below, BNSF's motion (Doc. No. 131) is granted in part.

### I.    BACKGROUND

The following are facts taken from the parties' motions, pleadings, and supporting documents. The facts are presumed true for the purposes of this order.

On September 22, 2021, Fitch filed a complaint with this court, alleging injury sustained in the course and scope of her employment with BSNF. (Doc. No. 1). Fitch alleges that on February 28, 2020, while working as a member of a train crew traveling from Minot, North Dakota, to Rugby, North Dakota, the train went into emergency stop, resulting in Fitch being thrown into the nose of the locomotive and sustaining injuries to her right arm, shoulder, and head.

On or about August 7, 2024, and September 4, 2024, BNSF requested Fitch produce information pertaining to Fitch's onX application. (Doc. Nos. 133-5, 133-6). On September 11, 2024, BNSF submitted a letter to Fitch again requesting production of her onX information. (Doc.

No. 133-7). The parties met and conferred, and on September 19, 2024, BSNF submitted a second

letter to Fitch in which BNSF requested Fitch provide a position letter. (Doc. No. 133-8). The same

day, Fitch provided BNSF with correspondence objecting to BNSF's request. (Doc. No. 133-9).

On October 7, 2024, the court held a discovery dispute status conference with the parties

pertaining to the disclosure of the onX information. (Doc. No. 128).

On October 11, 2024, BNSF filed a motion to compel. (Doc. No. 131). BNSF requests the

court order Fitch to produce her onX data as she has placed her physical condition, specifically

pertaining to her ability to ambulate, hike, or maintain balance, into dispute.

## II.    LEGAL STANDARD

Rule 37 of the Federal Rules of Civil Procedure govern motions to compel discovery. FED.

R. CIV. P. 37. Under this rule, a party may move for an order compelling answer, designation,

production, or inspection after the parties have conferred or attempted to confer in good faith. FED.

R. CIV. P. 37(a)(1), (3)(B).

The Federal Rules of Civil Procedure 26(b)(1) defines the scope of discovery. Rule

26(b)(1) provides:

> Unless otherwise limited by court order, the scope of discovery is as follows: Parties
> may obtain discovery regarding any nonprivileged matter that is relevant to any
> party's claim or defense and proportional to the needs of the case, considering the
> importance of the issues at stake in the action, the amount in controversy, the
> parties' relative access to relevant information, the parties' resources, the
> importance of the discovery in resolving the issues, and whether the burden or
> expense of the proposed discovery outweighs its likely benefit. Information within
> this scope of discovery need not be admissible in evidence to be discoverable.

FED. R. CIV. P. 26(b)(1). "The scope of discovery under Rule 26(b) is extremely broad." *Rychner*

*v. Cont'l Resources, Inc.*, No. 1:19-cv-71, 2021 WL 2211110, at *2 (D.N.D. June 1, 2021) (quoting

*Gowan v. Mid Century Ins. Co*., 309 F.R.D. 503, 508 (D.S.D. 2015)). "Mutual knowledge of all

the relevant facts gathered by both parties is essential to proper litigation. To that end, either party

may compel the other to disgorge whatever facts he has in his possession." *Hickman v. Taylor*, 329 U.S. 495, 507 (1947). "Discoverable information itself need not be admissible at trial; rather, the defining question is whether it is within the scope of discovery." *Linseth v. Sustayta*, 2022 WL 16744347, at \*2 (D.N.D. Nov. 7, 2022) (quoting *Colonial Funding Network, Inc. v. Genuine Builders, Inc*., 326 F.R.D. 206, 211 (D.S.D. 2018)). Information is considered discoverable if relevant to a party's claim or defense and proportional to the needs of a case. FED. R. CIV. P. 26 advisory committee's notes to 2015 amendment. "After the proponent makes a threshold showing of relevance, the party opposing a motion to compel has the burden of showing its objections are valid by providing specific explanations or factual support as to how each discovery request is improper." *Linseth*, 2022 WL 16744347, at \*2; *see Jo Ann Howard & Assocs., P.C. v. Cassity*, 303 F.R.D. 539, 542 (E.D. Mo. 2014). "The party must demonstrate to the court 'that the requested documents either do not come within the broad scope of relevance defined pursuant to Rule 26(b)(1) or else are of such marginal relevance that the potential harm occasioned by discovery would outweigh the ordinary presumption in favor of broad disclosure.'" *Jo Ann Howard & Assocs., P.C.*, 3030 F.R.D. at 542 (quoting *Burke v. New York City Police Dep't*, 115 F.R.D. 220, 224 (S.D.N.Y. 1987)).

## III.    DISCUSSION

BNSF requests the court grant its motion to compel and order Fitch "to produce information available to her on her onX application, or alternatively, to execute an authorization to allow BNSF to collect [Fitch's] onX data independently."[1] (Doc. No. 131 at 1).

---

[1] BNSF specifically requests Fitch produce information contained within her personal onX account, located in her onX application, or onX "app."

The court is not inclined to permit BNSF to collect Fitch's onX data independently. However, it will require Fitch to produce the hiking data available to her through her onX account, albeit after the parties submit an appropriate proposed protective order to the court.

Fitch argues the onX information is not relevant and is an "overbroad publicization of Fitch's private location data." (Doc. No. 135 at 2). The court does not agree. This is a situation where Fitch alleges she received head injuries from the incident that continue to give her symptoms, including vertigo. Due to her continuing symptoms, Fitch's treating provider, Dr. Lockman, imposed work restrictions in an off-work letter. The letter states in part:

> Ms. Fitch is unable to work at this time. She has cognitive and physical deficits due to a traumatic brain injury and brachial plexopathy. She is unable to reach, lift, bend, crawl, twist, sit for more than 10 minutes, stand for more than 10 minutes, or ambulate for more than 10 minutes. She is unable to use a computer, be asked to make critical decisions, read documents, or problem solve in a work setting.

(Doc. No. 133-1 at 5). However, despite her restrictions, at the time of the July 24, 2024, deposition, Fitch noted she continues to hike, though with some difficulty. Moreover, when asked if she uses any applications during her outings, she denied usage. Specifically,

> Q: When you're doing this kind of walking exercise, do you use any kind of Fitbit or Apple Watch or anything like that, fitness tracker?
> A: No.

(Doc. No. 133-4 at 8). Upon further examination of Fitch's recreational activities, she revealed using onX as a tool during her hikes. (*Id.* at 20).

> A: … Hiking, I went last summer. I mean I feel like hiking around here, too, is the trails or whatever.
> Q: And that's something you're still able to do, use a hiking stick to address balance issues?
> A: Yeah. I think, and then using, like, onX as like a tool to make sure where you're at and stuff because I think that's a big worry of mine.
> Q: That's a map-based GPS on your phone?
> A: Yeah, the onX. So it can track where you started.
> Q: Do you track all your hikes on onX?
> A: Not all of them. Well, the ones that I – yeah, I don't – I don't think I've done all of them.

(*Id.*). This application has a variety of features pertaining to hiking (among other activities), and "allows you to record your path as you travel and saves it on your map, taking the guess work out of backtracking so you can have the confidence to explore the unknown. You'll also see the time the trip took, as well as distance and average speed." *onX Backcountry Features*, ONX MAPS, https://www.onxmaps.com/backcountry/app/features#:~:text=With%20onX%20Backcou     (last visited Dec. 6, 2024). It also has features offering detailed information regarding trail length, difficulty level, and elevation profiles. *onX Backcountry App*, ONX MAPS, https://www.onxmaps.com/backcountry/app (last visited Dec. 6, 2024).

Because Fitch alleges that she incurred a head injury, with corresponding symptoms,[2] and her provider has placed significant restrictions on her ability to ambulate,[3] it stands to reason she has placed her ability to engage in daily and/or recreational activities at issue. While Fitch argues this is not the case and she has "never denied that she remains able to walk or hike when she feels up for it and is able to use appropriate equipment such as a walking stick" (Doc. No. 135 at 3), the question remains whether and to what extent Fitch is able to ambulate. The onX data would provide the parties with relevant information as to Fitch's hikes, including the elevation, length, difficulty, and time of completion. This is not a question of whether Fitch is able/unable to hike, but the extent to which Fitch has the ability to ambulate and engage in recreational activity considering her alleged symptoms and restrictions.

Fitch also represents that providing the onX data constitutes a massive overreach into her personal location data. This argument is unpersuasive. While the court understands Fitch's concern

---

[2] Fitch asserts she has consistently maintained she has pain and balance issues when walking or hiking. It is not disputed that Fitch's pain and balance are physical conditions in controversy. (*See* Doc. No. 135 at 4-5).
[3] In her argument, Fitch attempts to distinguish her recreational activities from her ability to work. Specifically, "Fitch's ability to walk recreationally under elective conditions has nothing to do with whether her physician's work restrictions are appropriate." (Doc. No. 135 at 5). Although Dr. Lockman's report is an "off-work letter," the court is not convinced her 10-minute stand and ambulation restrictions are inapplicable to everyday living.

in revealing her personal location information, the data is not always tracking her whereabouts, rather it notates the locations of where she has hiked in the past (when she chooses to use said application for her hikes). Although the court is inclined to allow BNSF access to Fitch's onX information, it is not going to permit BNSF to collect Fitch's data independently or gain access to her username and password. Rather, the parties shall be required to enter into a protective order for the information's disclosure.

Fitch also opposes BNSF's argument that it cannot be forced to "sequence" its discovery in a particular way. She similarly takes issue with the timeliness of BNSF's onX data request. In terms of Fitch's timeliness argument, she alleges she was not required to produce the onX data in response to request for production #23 as she never contested her ability to hike, so the GPS location data is not responsive to the request. Request for production #23 sought, "[a]ny and all documents that support any claim that Plaintiff's ability to perform A.D.L.s, participate in Recreational Activities or perform her hobbies has been adversely affected." (Doc. No. 133-3 at 6). In her supplemental answers to interrogatories, Fitch asserted she feels pain during and after hiking (*See* Doc. No. 133-2 at 6) but in her responsive brief argued she has not contested her ability to hike, and so did not have to produce the onX data. However, it appears to the court that experiencing pain during and/or after hiking could be considered an adverse affect on her ability to perform the activity. Similarly, while Fitch argues the onX data was not responsive to request for production #32, which sought "[a]ll documents that reflect, describe, summarize or refer to the Incident or the claims and damages as alleged in Plaintiff's complaint" (Doc. No. 133-3 at 8), because her damages have never included her ability to hike, here the onX information relates to Fitch's ability, or lack thereof, to ambulate given her alleged injuries and imposed restrictions.

Moreover, although BNSF could have done its "sequencing" differently, Fitch's depositions show much ambiguity as to her responses. Notably, in her July 23, 2022, deposition, Fitch stated she had not gone hiking[4] since her time in Montana (Doc. No. 136-1 at 54), but in her July 24, 2024, deposition she was noted to walk various trails in Minnesota. (Doc. No. 133-4 at 8). Although Fitch attempts to paint a picture that BSNF failed to ask any follow-up questions or for details about Fitch's hikes, the deposition record is clear that BSNF sought information about the types of trails Fitch used, just not at the time Fitch cites to in her responsive brief. (*Id.*; *see* Doc. No. 135 at 7).

Lastly, BNSF requests the court award reasonable expenses pursuant to Federal Rules of Civil Procedure 37(a)(5)(A). Under Rule 37, if a motion to compel is granted, the court must require the party whose conduct necessitated the motion pay reasonable expenses, including attorney's fees, to the movant. FED. R. CIV. P. 37(a)(5)(A). However, the court is not required to permit payment if: (i) the movant filed the motion prior to attempting in good faith to obtain discovery without court interference; (ii) nondisclosure, response, or objection by the opposing party was justified; or (iii) other circumstances make awarding reasonable expenses and attorney's fees unjust. FED. R. CIV. P. 37(a)(5)(A)(i)-(iii). If there is a situation in which the motion to compel is granted in part, the court may issue a protective order under Rule 26(c) and apportion reasonable expenses. FED. R. CIV. P. 37(a)(5)(C).

The court is disinclined to award reasonable expenses to either party. The court is cognizant of the fact this is one of multiple discovery motions filed in the above-captioned matter, and the parties have been unable to resolve their conflict without court intervention. However, this is also a situation where, although the motion is being granted in part, the court agrees with Fitch that her

---

[4] The June 23, 2022, deposition shows it is unclear whether Fitch's recreational activities are, or should be, classified as "hiking" or "walking." The court shall use the terms interchangeably.

objection was substantially justified under Rule 37(a)(5)(A)(ii). An objection is considered substantially justified "if there is a 'genuine dispute,'…or 'if reasonable people could differ as to [the appropriateness of the contested action].'" *Oyen v. Land O'Lakes Inc.*, No. CIV. 07-4112, 2009 WL 536606, at *2 (D.S.D. Mar. 3, 2009) (quoting *Pierce v. Underwood*, 487 U.S. 552, 565 (1988)). The parties have starkly contrasting interpretations of what the onX data will be used for and its relevance in this matter. It is also understandable that Fitch has an interest in protecting her personal location data and may be concerned about revealing it in a public manner. As such, there will be no award of attorney's fees and costs.

## IV.    CONCLUSION

For the reasons articulated above, BNSF's motion (Doc. No. 131) is **GRANTED IN PART**. The parties shall submit an appropriate proposed protective order pertaining to the production of Fitch's onX information to the court for its review within fourteen days from the date of this order.

**IT IS SO ORDERED.**

Dated this 20th day of December, 2024.

/s/ Clare R. Hochhalter
Clare R. Hochhalter, Magistrate Judge
United States District Court